## STATE OF CONNECTICUT *v.* DAVID DECARLO
### (AC 25419)

Flynn, Bishop and McLachlan, Js

Argued September 26—officially released December 13, 2005

*Conrad Ost Seifert*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Robert G. Hall, Jr.*, state's

attorney, and *Michael A. DeJoseph*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, David DeCarlo, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59. On appeal, the defendant claims that the state committed prosecutorial misconduct during closing argument to the jury, consequently depriving him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of August 24, 2001, the defendant and three friends attended a party[1] at the home of a teenage girl, Colleen Fleischmann, in Westport.[2] Fleischmann arranged to host the party while her parents were out of town. Several dozen young partygoers engaged in underage drinking and drug use during the party. The victim, Charles Grace, and several of his friends arrived at the party at approximately 11:30 p.m. At approximately 1:30 or 1:45 a.m. on August 25, 2001, Fleishmann indicated that she wanted the party to end and asked the partygoers to leave. As the victim and his friends were leaving the party, the victim saw the defendant demanding that people leave the party while brandishing an empty beer bottle in his right hand. A fight broke out between the defendant, his brother and a larger group of guests at the party. During the fight, the victim saw one of the defendant's friends punch a friend of the victim in the face and begin to attack him. The victim pushed the person off the friend and punched him twice in the back.

---

[1] The defendant attended the party with his brother, Peter DeCarlo, and their friends, Michael Lopez and Fran Federoff.

[2] The defendant and his friends drove from New Jersey to attend the party. Most of the guests at the party were from Connecticut.

When the fighting stopped, the victim again tried to leave the party. The defendant had sustained an injury during the fight that caused him to bleed from the head. After injuring his head, he ran into the kitchen and grabbed a knife before returning outside to the garage where the fight had occurred. The victim saw the defendant run from the kitchen down the garage steps and out into the driveway. The defendant brandished a five inch serrated steak knife and screamed, "[W]ho did it?" The guests began to scatter in an effort to get away from him. The victim and another friend, Joe Shevlin, each grabbed a handle of the victim's cooler and headed out to the driveway. The defendant then ran toward Shevlin and the victim until he was five to ten feet in front of them. The victim told the defendant, "We're leaving. We're getting out of here. We don't want any trouble." One of the defendant's friends pointed at the victim and stated, "That's the kid with the braids," and the defendant rapidly advanced on the victim. The victim and Shevlin then dropped the cooler that they had been carrying and began running away from the defendant. The victim tried to get into his friend's car, but he was unable to do so. The defendant then struck another of the victim's friends, David Del Medico, in the face while one of the defendant's companions beat Matthew Del Medico and his friend, Pat Buckley. The victim ran over to help his friends. Before the victim reached them, the defendant advanced toward him with the knife. The victim told him in a loud voice, "Relax," and, "We're leaving," and, "I didn't touch you. I had nothing to do with anything with you." The defendant approached the victim and punched him in the face with his left hand. The victim staggered back and pushed the defendant away from him. The defendant stumbled back but charged toward the victim again. The victim thought that the defendant was going to punch him with his right hand, so he raised his left hand to block

the blow. The defendant then slashed the victim's face with the five inch long steak knife that he held in his right hand. The knife caused two lacerations that extended from the victim's nose up through his left eyelid and eyebrow. After the assault, the defendant and his companions fled to New Jersey.

On September 26, 2001, the defendant was arrested in New Jersey and brought to the Westport police department. He was charged with assault in the first degree in violation of § 53a-59. At trial, the defendant admitted that he had obtained a knife from the side of the kitchen sink and then used it to cut the victim. He claimed, however, that he had used the knife only to defend a third person, Fran Federoff. The defendant was convicted.

The defendant claims that the prosecutor engaged in misconduct that deprived the defendant of a fair trial. Specifically, the defendant claims that the prosecutor's remarks during closing argument about Federoff's not testifying were improper. We review the defendant's claim in accordance with the standard set forth in *State* v. *Stevenson*, 269 Conn. 563, 849 A.2d 626 (2004). See *State* v. *Blackwell*, 86 Conn. App. 409, 417–18, 861 A.2d 548, (2004) cert. denied, 272 Conn. 922, 867 A.2d 838 (2005). "[T]he touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by [our Supreme Court] in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). As [our Supreme Court] stated in that case: In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the

misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . .

"Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. . . . Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in claims involving prosecutorial misconduct, therefore, is always and only the fairness of the entire trial, and not the specific incidents of misconduct themselves." (Citation omitted; internal quotation marks omitted.) *State* v. *Blackwell*, supra, 86 Conn. App. 417–18.

I

Before applying the *Williams* factors, we first must determine whether prosecutorial misconduct in fact occurred. See *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003). The defendant claims that the misconduct occurred when the prosecutor made repeated remarks during his closing argument about Federoff's not testifying. The prosecutor argued: "The defendant's alleging that he came to the defense of Fran Federoff. Now, we did not hear any testimony from Fran Federoff about whether or not the defendant was coming to defend him. Other people came in and testified for the defendant. Now, if the defendant puts on no case, the state cannot comment upon the defendant's fifth amendment privilege against self-incrimination. If the defendant doesn't put on a case, you can't draw any negative inference from it. Once a defendant puts on a

case, ladies and gentlemen of the jury, you can look at the weaknesses of it and you can draw negative inferences from the weaknesses of the defendant's case. The defendant testified that he drove down to Delaware to get Michael Lopez up here to testify. The defendant testified that Fran Federoff is in Paterson, New Jersey. No one brought Fran Federoff up in to testify."[3]

The so-called "missing witness" law in this area is governed by *State* v. *Malave*, 250 Conn. 722, 724, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). Our Supreme Court in *Malave* abandoned the rule enunciated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), which had permitted trial courts to instruct the jury that "[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." (Internal quotation marks omitted.) Id., 675. Although the Court in *Malave* abandoned the *Secondino* rule, it did not prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. *State* v. *Malave*, supra, 739. The court did, however, prohibit counsel from directly urging the jury to draw an adverse inference by virtue of the witness' absence. Id. Additionally, the court stated that "[f]airness, however, dictates that a party who intends to comment on the opposing party's failure to call a certain witness must so notify the court and the opposing party in advance of closing arguments. Advance notice of

---

[3] Defense counsel objected to that statement. The court ruled in the defendant's favor and specifically instructed the jury to disregard the state's argument. The prosecutor again began to argue that Federoff never testified. Defense counsel objected, and the court once again sustained the objection and instructed the prosecutor not to make reference to any witnesses who were not produced.

such comment is necessary because comment on the opposing party's failure to call a particular witness would be improper if that witness were unavailable due to death, disappearance or otherwise. That notice will ensure that an opposing party is afforded a fair opportunity to challenge the propriety of the missing witness comment in light of the particular circumstances and factual record of the case." Id., 740.

The state claims that the prosecutor's comments during closing argument regarding the absence of Federoff did not directly exhort the jury to draw an adverse inference. We disagree. The language used by the prosecutor, although not the same words as proscribed by the *Malave* rule, had the same purpose—to invite the jury to draw an adverse inference. In addition, the state concedes that it violated the *Malave* rule when it failed to provide advance notice that the prosecutor would be referring in closing argument to the fact that Federoff had not been called as a witness. Accordingly, we conclude that the prosecutor did commit misconduct.

## II

To determine whether the misconduct deprived the defendant of a fair trial, we apply the *Williams* factors. We conclude that the challenged conduct was neither egregious nor pervasive and that the effect on the jury could not possibly have been severe. First, the misconduct, which was limited to two comments during the state's closing argument, was infrequent.[4] See *State* v. *Stevenson*, supra, 269 Conn. 593–94 (two improper comments in closing argument not frequent). Second, the court gave prompt curative instructions to the jury

---

[4] There was an alleged third comment made during closing argument. Defense counsel objected, but was overruled when the prosecutor explained that the reference he was making was to Federoff's absence from the scene of the defendant's assault on the victim, not to Federoff's absence from the courtroom.

regarding the improper comments made by the prosecutor during the closing argument. See *State* v. *Henry*, 72 Conn. App. 640, 681–82, 805 A.2d 823 (prompt curative instruction can prevent undue harm when prosecutor's argument runs afoul of *Malave*), cert. denied, 262 Conn. 916, 811 A.2d 1292 (2002). Finally, the strength of the state's case militates against a conclusion that the prosecutor's comments during closing argument affected the fundamental fairness of the trial. It was undisputed at trial that the defendant slashed the victim's face with a knife, immediately left the scene with his three friends, traveled to New Jersey without contacting the police, never sought medical assistance despite his claim that he was injured and twice lied in his statements to police about having "blacked out" after he entered the kitchen where he had obtained the knife. Moreover, the victim's testimony that he was attacked by the defendant was corroborated by two other witnesses.

It is clear that the prosecutor's two improper remarks did not cause the defendant substantial prejudice. The court gave sufficient curative instructions, and the state's case against the defendant was sufficiently strong. Accordingly, we conclude that the defendant has not satisfied his burden of showing that the prosecutor's conduct was blatantly egregious or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The judgment is affirmed.

In this opinion the other judges concurred.